47 CCPA

**SINGER MANUFACTURING COMPANY and Singer Sewing Machine Company**

v.

**Julia BRUEGGEMAN, doing business as Julia Brueggeman Enterprises.**

**Patent Appeal No. 6551.**

United States Court of Customs and Patent Appeals.

June 8, 1960.

Robert B. Harmon, Washington, D. C. (Chester A. Williams, Jr., New York City, of counsel), for appellants.

Julia Brueggeman, pro se.

Before RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal from the Patent Office is from the decision of the Trademark Trial and Appeal Board unanimously dismissing an opposition to the registration of "Sew-Easy" [1] on the Principal Register as a trademark for "ready-cut doll clothes including materials, needles and thread for making clothes for dolls," serial No. 18,552 filed November 1, 1956, claiming first use in September 1956.

The opposers are The Singer Manufacturing Company and its wholly owned subsidiary Singer Sewing Machine Company. They rely on Reg. No. 275,403, issued September 13, 1930 (renewed) of "Sewhandy" for "sewing machines and sewing-machine needles" and also on prior use of the same mark on a child's hand-operated sewing machine and a sewing kit or mannikin doll sewing set including a carrying case. There is no substantial dispute as to the facts.

The board, after saying that the opposers' kits had been sold both with and without the "sewhandy" machines, found the following additional facts:

"* * * 'Sewhandy' juvenile sewing machines have been separately marketed through opposers' retail establishments and other retail stores since 1950. Opposers commenced use of 'Sewhandy' on the sewing kits in 1951, and made estimated sales of close to 16,000 units thereof during the years 1951 to 1954. The sale of these goods was then discontinued and has not since been resumed.

"Opposers discontinued the marketing of 'Sewhandy' sewing machine kits over two years prior to the filing of this opposition. No explanation has been offered in that regard; nor does the record show that opposers are now prepared, or have any intention, to resume the marketing thereof. * * *

"Applicant's 'Sew-Easy' kit is intended for use by children in making hand sewn doll clothes, and includes precut cloth for several different kinds of garments, needles, and thread. This product sells for something under two dollars, and has been distributed through department and toy stores and the like since September, 1956.

"The proofs establish that opposers have had continuous use of 'Sewhandy' on juvenile sewing machines since several years prior to applicant's first use of 'Sew-Easy' for the hand-sewing product for which registration is sought."

The board, apparently assuming that opposers' trademark rights in "Sewhandy" subsisted only with respect to machines and the normal aura of protection related thereto, held that the cumulative differences in the marks and the goods obviate any reasonable likelihood of confusion or mistake or deception of purchasers.

One element in this case which the board opinion did not mention is that opposers' child's sewing machine, as the record shows, is not sold simply as a "Sewhandy" machine. It is sold as a "*Singer* Sewhandy Model No. 20" sewing machine with emphasis either on the name "Singer" or on that company's

1. The mark *as used* on applicant's box is without a hyphen and is part of a label appearing four times in the form "Sew Easy Ready-cut Doll Clothes." This discrepancy should be resolved before registration. Another legend reads "Kit is complete even to needle and thread."

well-known trademark consisting of a large capital "S" with the three words "Singer Sewing Machines" superposed on its three horizontal portions. The sewing kits which were sold *with* sewing machines bore labels in which the prominent word was "Singer" in type several times larger than the legend thereunder reading "Sewhandy Mannikin Set." The kits sold *without* sewing machines were sold as "Singer Mannikin Doll Set" and the only relevance such kits have here is to show that opposers sold sewing kits under the "Singer" mark and also to show that inside the cover they advertised the omitted "Singer Sewhandy" machine. Thus opposers' record shows, in the various forms of trademark *usage* relied on, a primary emphasis on "Singer" or the "S" symbol with "Sewhandy" in a secondary position as an identification of a particular Singer Company sewing machine, or sewing kit including that machine.

Appellants, perhaps justifiably, object to the board's apparent dismissal of their trademark rights in "Sewhandy" with respect to sewing kits because of their admitted discontinuance of the sale thereof in 1954. They argue that they have not abandoned the *mark* since they continue to use it on juvenile machines and that since they sell merchandise in many phases of the sewing field, sewing kits would be a natural extension of the children's sewing machine business. They say the fact they were once in this business puts that matter beyond question and that they might want to go back into it. We think this argument is sound but we are still faced with the problem of likelihood of confusion from the concurrent use of "Sew-Easy" and opposers' mark.

The board, as we have indicated, predicated its decision on a cumulation of differences in goods and differences in marks. If we eliminate consideration of differences in the goods we also eliminate most of the opposers' arguments before us and reduce the issue to likelihood of confusion from concurrent use of the two marks. Even when we do this we find we are still in agreement with the board's conclusion.

In our opinion the only similarity in the marks is in the common inclusion of the common word "Sew." We agree with the board that it is devoid of trademark significance. This is so because it is purely descriptive of sewing kits, materials or machines or any combination thereof, even if integrated into a unitary mark. We think this common element is of very little significance on the likelihood of confusion issue.

As to the other parts of the marks, the Easy in "Sew-Easy" and the Handy in "Sewhandy," we are unable in our subjective collective judgment to agree with opposers' contention that there is any such real similarity of any kind as to be likely to cause confusion or mistake among purchasers of these goods, even should they be children as opposers say may be the case. From the point of view of adults—and we think the same would apply to children—Easy and Handy do not sound alike, look alike, have the same or very similar meanings or create the same psychological impact. The facts that they both end in "Y" and that one has four letters and the other five do not impress us. Our psychological reaction to EASY is: something simple, not difficult. Handy means to us convenient, ready-to-hand for use. These reactions correspond to the meanings ascribed by opposers but we cannot go with them the next step, that these meanings are manifestly similar, even in a broad sense.

We therefore affirm the board.

Affirmed.

WORLEY, C. J., was not present at the argument and did not participate in this decision.